UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. <u>21-CR-60079-AMC</u>

UNITED STATES OF AMERICA

vs.

MICHAEL MIZRACHY,

      **Defendant.**

                                   /

## <u>GOVERNMENT'S SENTENCING MEMORANDUM AND MOTION FOR UPWARD VARIANCE</u>

The United States of America, by and through the undersigned Assistant United States Attorney, hereby submits this sentencing memorandum and motion for upward variance. For the reasons set forth below, the United States requests that this Court impose a term of imprisonment of ten (10) years.[1]

### BACKGROUND

On March 2, 2021, the Defendant was indicted by a grand jury sitting in the Southern District of Florida with one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2) (DE:8). On October 14, 2021, the Defendant pled guilty to the indictment (DE:25). The Defendant is scheduled to be sentenced on February 4, 2022.

### GUIDELINES

The advisory sentencing guideline range, as calculated in the PSR, per U.S.S.G. § 2G2.2,

---

[1] The undersigned Assistant United States Attorney has previously notified counsel for the defense of the United States' intent to seek an upward variance from the sentencing guidelines, from the inception of the case.

is 46 to 57 months' imprisonment given a criminal history category I and a total offense level of 23 resulting from the applicable enhancements (PSR ¶ 55). The Defendant did not file any objections to the PSR, thereby agreeing with the PSR's calculation of the guideline range.

After properly calculating the sentencing guidelines range, a district court must next consider and balance the sentencing factors in 18 U.S.C. § 3553(a) to determine a "reasonable" sentence, which may be more or less severe than that provided for by the guidelines range. *United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005). The court need not discuss each of the 3553(a) factors in imposing a sentence, *see United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005), so long as the record reflects consideration of the factors in general, *see Nelson v. United States*, 555 U.S. 350 (2009).[2] Finally, in rendering a sentence, a district court must adequately explain the chosen sentence, including any deviation from the advisory sentencing guidelines range. *See, e.g.*, *United States v. Pugh*, 515 F.3d 1179, 1191 n.8 (11th Cir. 2008); *see also Irizarry v. United States*, 553 U.S. 708, 714 (2008) (discussing the difference between a departure and a variance).

---

[2]  The following are the factors outlined in Section 3553(a): (i) The nature and circumstances of the offense and the history and characteristics of the defendant; (ii) The need for the sentence imposed – (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes of the defendant; and (4) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) The kinds of sentences available; (iv) The kinds of sentence and the sentencing range established for the instant offense by the Guidelines; and (v) Any pertinent policy statements issues by the United States Sentencing Commission. *See* 18 U.S.C. § 3553(a).

**ARGUMENT**

A.      Victims of Child Pornography

First, as part of the factors laid out under Title 18, United States Code, Section 3553(a), the Court is required to consider the nature and circumstances of the offense— here, possession of child pornography, in violation of Title 18, United States Code, Sections 2252(a)(2) and (a)(4)(B). At the heart of this crime is the sexual gratification derived from the rape and sexual exploitation of one of the most vulnerable people in our community: children.

"It goes without saying that possession of child pornography is not a victimless crime." *United States v. Yuknavich*, 419 F.3d 1302, 1310 (11th Cir. 2005). "A child somewhere was used to produce the images downloaded … because, in large part, individuals like [the defendant] exist to download the images." *Id.* As the Seventh Circuit Court of Appeals put it:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded – both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced.

*United States v. Pugh*, 515 F.3d at 1194 (citing *United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir.) (citations omitted), *cert. denied*, 552 U.S. 1041 (2007). This is the reason that Congress chose to criminalize the possession of child pornography:

> [T]he existence of and traffic in child pornographic images ... inflames the desires of child molesters, pedophiles, and child pornographers who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials; the sexualization and eroticization of minors through any form of child pornographic images ... encourag[es] a societal perception of children as sexual objects and lead[s] to further sexual abuse and

3

> exploitation of them; and ... prohibiting the possession ad viewing of child pornography will encourage the possessors of such material to rid themselves of or destroy the material, thereby helping to protect the victims of child pornography and to eliminate the market for the sexual exploitative use of children ....

*United States v. Maxwell*, 446 F.3d 1210, 1217 (11th Cir. 2006) (quoting Pub.L. No. 104-208, § 121, 110 Stat. at 3009-27); *see United States v. Williams*, 444 F.3d 1286, 1290 (11th Cir. 2006) ("Our concern is not confined to the immediate abuse of the children depicted in these images, but is also to enlargement of the market and the universe of this deviant conduct that, in turn, results in more exploitation and abuse of children").

It is undeniable that "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *New York v. Ferber*, 458 U.S. 747, 758 (1982) (footnote omitted). These videos and images strip the children of their innocence, thereby depriving them of the sense of security and dignity to which they are entitled. Of concern is the extent to which the harm is intensified every time the images and videos are distributed, traded, and downloaded. To the predators, the images and videos are a means to sexual gratification. To the victims, they serve as a constant reminder of their suffering.

In July 2017, the Canadian Centre for Child Protection published a report that analyzed information derived from 150 now-adult survivors of child pornography-related offenses (*See Canadian Centre for Child Protection*, https://www.protectchildren.ca/en/resources-research/survivors-survey-results/, last accessed January 28, 2022) (hereinafter "CCCP Report"). The results showed the following:

- Almost 70% of the victims worried about being recognized by someone because of the recording of their child sexual abuse.
- Thirty victims reported being identified by a person who had seen their child sexual abuse imagery.

4

- 58% of survivors reported having had more than one person abusing them, while 82% of the primary offenders involved in multiple offender scenarios were parents or extended family members of the child.
- 56% of the survivors indicated that the abuse began before the age of four, and 87% were 11 years of age or younger. 42% were abused for more than 10 years.
- At least 74 survivors (nearly 50%) were survivors of organized sexual abuse (abuse that involves children being subjected to sexual abuse by multiple offenders).
- 67% of the survivors were threatened with physical harm including being told they would die or be killed.
- 85% of the survivors anticipated needing ongoing/future therapy.

(*See id.*). The CCCP Report also provided an extensive summary of the victims' responses to a number of topics that illustrated the impact that the crime had on them and how they feel knowing that predators possess, distribute, and upload images and videos depicting their abuse. Some of those responses appear as follows:

- I'm powerless. I can't get any control. The images are out there.
- Images.... feels like you're exposed to the whole world. Hands on you're stuck in a dark place. No one can hear you or see you. You're trapped. You're screaming for help but no one can hear you.
- The idea that I never get older than 6 to 9 years old on the Internet, that this will always be there and will always continue to be shared, makes it difficult to let go of it permanently.
- The images are indestructible and reach a huge lot of people and it is unstoppable. That's what makes it the worst thing for me. The idea that a complete and utter stranger has seen you and that I'm somebody's gratification right up to this very day.
- It causes me great shame knowing that someone else sees me in this situation and does not help.
- The hands-on sexual abuse has ended and I have closure about it. I also know who did it and they are in jail, likely for the rest of their life so they are no longer a threat. The images are downloaded by strangers. The scariest enemy is the one you cannot see, but know is there. That type of threat causes much more anxiety and paranoia because it is unpredictable. These images will always be out there and I can't predict when and how they will affect my life by hearing of people being caught with them or being stalked by someone who has seen them. The threat is always there and I am always dreading when it will come up. They also mess with my identity because I am shocked at the number of people who have viewed them and seen the worst moments of my life and have convinced themselves that I enjoyed them. Even worse, is knowing that they are constantly getting sexual

gratification from something that was so painful for me. I feel used and have no control over it or way to stop it. I can only fight back in small ways, but the problem will continue and I don't see an end to my having to fight back. It is exhausting

- They are the same thing. Looking at pictures and videos is the same thing as physically doing it. That's what everyone doesn't understand. It is like raping us all over again and again.

(CCCP Report, at 147-156).

        B.     <u>Who is Defendant Michael Mizrachy?</u>

The Defendant is a pediatrician who has spent the last twenty (20) years examining children of all ages. This is the same pediatrician who, by his own words, admitted to being sexually attracted to children. The hypocrisy between the Defendant's criminal conduct and his duty as a pediatrician is striking. The Defendant spent his entire career physically examining the bodies of patients whose age range and development are consistent with whom is he sexually aroused. What is most troubling is that the Defendant, by the very virtue of his profession, has himself likely examined or treated children who have been sexually abused. It is simply beyond understanding how he could provide medical services and counseling to children in one room, and then proceed to his office—mere feet away—to send pictures of his erect penis, while in his medical coat behind the comfort of his work desk, to co-workers. Simply put, he is the proverbial wolf in sheep's clothing.

Although he successfully concealed his deviant desires from his family, friends, and pediatric colleagues, he refused to restrain his illicit behavior. He confessed to law enforcement that he used the Kik platform to engage in sexually explicit conversations with children and would delete the platform nightly to prevent anyone from discovering his conduct. In other words, he roughly deleted and reinstalled the Kik application hundreds of times in order to mask his repeated

attempts to seek out real children in real time.[3] One such child, "[Name Redacted]" sent several photographs to the Defendant that included her face, her nude body, and her vagina.[4] The Defendant saved the images and categorized them in his Yahoo email account with subject lines such as "[Name Redacted] Lamb 15" and "More [Name Redacted]", as if the child's nude photographs warranted preservation.

In addition to seeking out real children through the internet, he also confessed to saving a video that he obtained online of a six-year-old child being raped, as well as taking photographs of his minor daughter's friends and saving those images so that he could view them, leisurely. His minor daughter's friends would come to—what they believed to be—a safe residence owned by a respected family pediatrician. While inside the Defendant's home, these kids were doing the most innocent of activities: eating, watching movies, playing in the pool, sleeping. And all the while, the Defendant surreptitiously took photographs of their bodies, zooming in on their clothed vaginas and buttocks. While most of the children appear to be 13-15 years old, there were photographs of a 10-year-old child. The images in question included the following:

- An image of a female child who appears to be prepubescent, between the ages of 8-10 years old, wearing pink underwear and a black sports bra. The child is in a home and is moving a blanket. The photo is taken behind the child at about her hips height.

- Photographs of a child who appears to be 13-15 years of age. The female child is face down on a blow-up toy floating in the pool on the Defendant's property. The child is wearing a black two-piece bikini and the focus is on the female child's

---

[3] Law enforcement was only able to recover images from one of these victims.

[4] Because the Defendant attempted to avoid detection by intentionally deleting his Kik messenger application daily, the United States was unable to identity the children with whom the Defendant communicated with, the extent of their sexually explicit communications, or any photographs or videos he received from these children, aside from those he took the time to save. Had a single identification been made, the Defendant would be indicted with far more severe charges which would have triggered high minimum mandatory sentences.

covered buttock and vaginal area.

- Images of a female child who appears to be 10-12 years of age, sitting on a couch with another female who is partially cut off in the photo. The female child is wearing pink shorts, black socks and a gray sweatshirt. She has her legs up on the couch and she is sitting on her side, which allows for the child's covered buttocks and vaginal area to be shown to the camera. There are additional images of this female in a blue two-pieced bathing suit and is standing at the kitchen counter. The focal point of these photos is of the child's buttock.

- Image saved in the Defendant's email as "[Name Redacted] Sleeping", which depicts a female child sleeping.

- Image saved in the Defendant's email as "[Name Redacted] Bathing-Suit", which depicts a female child laying in a bathing suit in what appears to be the Defendant's backyard. The focal point of the image is the child's buttocks and vaginal area.

The children do not appear to be aware that the Defendant took photographs of their bodies.

      C.     <u>General and Specific Deterrence</u>

With respect to general deterrence, a primary purpose of child pornography legislation is to combat the consumption of, as well as the market for, child pornography. By imposing severe penalties on the individuals whose prurient demands fuel the market for violent and egregious child pornography, courts can begin to reduce the market for child pornography, and, as a result, reduce the number of children who are victimized by the production of child pornography. This is particularly true in cases where even some of the victims are prepubescent. As other circuits have recognized, "[g]eneral deterrence is crucial in the child pornography context." <u>United States v. Camiscione</u>, 591 F.3d 823, 834 (6th Cir. 2010); <u>see</u> <u>also</u> <u>United States v. Goldberg</u>, 491 F.3d 668, 672 (7th Cir. 2007) ("[t]he logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the demand for it and so the more will be produced."); <u>United States v. Goff</u>, 501 F.3d 250, 261 (3d Cir. 2007) (recognizing that deterrence should be "given significant weight at sentencing" in child pornography cases);

Osborne v. Ohio, 495 U.S. 103, 109 (1990) (laws criminalizing possession of child pornography are intended to "destroy a market for the exploitative use of children").

The Defendant unquestionably spent many hours seeking out real children, taking photographs of real children, and viewing sexually explicit photographs of children, all while presenting himself as a pediatrician who cared for children of all ages. In this case, the need for a sentence that addresses both general and specific deterrence is imperative. A sentence of ten (10) years' imprisonment would afford general deterrence to those persons in positions of trust who engage in sexually exploitative conduct against children and serve to deter the Defendant from committing such offenses again.

D.     The Needs of the Public and the Victims of the Offense

Finally, the public and the victims of child pornography have a strong interest in punishing Defendant for this serious crime — a crime that causes actual injury to the innocent and young victims whose most traumatic moments Defendant and others like him transform into objects of pleasure and fantasy. The interest of the victims, prepubescent children and toddlers, in a sentence that reflects the seriousness of child pornography offenses cannot be overstated.

**The Defendant's Motion for Downward Variance**

As the United States argues for a sentence of ten (10) years' imprisonment, the Defendant has taken a radically different position. In his motion for downward variance, he requested a sentence less than 46 months' imprisonment and treatment. *See Defendant's Sealed Sentencing Memorandum* at 20. In his request, the Defendant argues, among other things, that "he was diagnosed with Disruptive, Impulse-Control and Conduct Disorder, and Unspecified Paraphilic Disorder" based on an obsession with his cellar device (*Id.* at 5); "he would be a good candidate

for treatment related to sexual self-regulation and sex offender treatment" (*Id.*); "he suffers from reduced mental capacity" pursuant to § 5H1.3 (*Id.* at 18); and cites to out-of-district cases arguing that they involve similarly situated individuals who have received downward variances (*Id.* at 14-18). The Defendant also points to his employment, family ties, lack of criminal history and community involvement for mitigation (*Id.*).[5]

> A.      The Defendant Seeks to Limit What this Court can Consider at Sentencing

As an initial matter, the Defendant argues that relevant conduct for this Court's sentencing considerations needs to be criminal conduct. Accordingly, he asks this Court to <u>ignore</u> "(A) clandestine recordings of fully clothed minors, during visits to Mr. Mizrachy's home; (B) Mr. Mizrachy's former occupation as a pediatrician (without any insinuation or allegation as to improper conduct); (C) his adult pornography viewing; (D) his adulterous actions with consenting adults; (E) photographs taken of Mr. Mizrachy, by Mr. Mizrachy, which exhibit his own body; and (F) photographs taken of Mr. Mizrachy, by Mr. Mizrachy, apparently at his workplace" *See Sealed Sentencing Memorandum* at 3. Importantly, however, the cases that he cites reference relevant conduct that goes towards the guidelines <u>calculations</u>, not an outright exclusion. As applied here, none of the above-mentioned relevant conduct has been included in the Defendant's <u>calculations</u>.

For purposes of the Section 3553(a) sentencing factors, this Court is entitled to consider the totality of the Defendant's sexual obsession with children, based on the aforementioned

---

[5] "Education and vocational skills are not ordinarily relevant in determining whether a departure is warranted…" USSG 5H1.2. Moreover, "Employment record is not ordinarily relevant in determining whether a departure is warranted." USSG 5H1.5. Likewise, the fact that a defendant "lacks" criminal history is no reason to depart from the guidelines. Had he had a criminal history, his criminal history level would have increased his sentence.

arguments, and for many of those very reasons, it justifies the United States' request for an upward variance to ten (10) years' imprisonment.

      B.  <u>Psychosexual and Risk Assessment Report, and Defendant's Assertion that He Suffers from Reduced Mental Capacity.</u>

The Defendant claims that his mental and emotional conditions warrant a downward departure. Under U.S.S.G. § 5H1.3, a defendant's mental and emotional conditions may be relevant in determining whether a downward departure is appropriate, but only if those conditions are "present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." The import of this statement is that a downward departure in a sentence under the guidelines based on the defendant's mental or emotional condition is discouraged.   Significantly, other federal courts who have addressed this issue of a defendant's mental or emotional condition held that the purported condition did not justify a downward departure from the sentence range suggested by the guidelines under U.S.S. G. § 5H1.3. See, e.g. *United States v. Maldonado-Montalvo*, 356 F.3d 65, 74 (1st Cir. 2003) (holding that the defendant's depression was not an "extraordinary condition" and thus was not grounds for a departure); *United States v. Doering*, 909 F.2d 392, 394 (9th Cir. 1990) (section 5H1.3 makes a defendant's mental condition relevant only in an extraordinary case). *See United States v. Barton*, 76 F.3d 499, 502 (2d Cir. 1996) (rejecting downward departure on grounds of mental and emotional conditions in child pornography case, where the defendant's psychiatrist noted that the defendant did not suffer from psychosis and appreciated the moral consequences of his behavior).

In support of this claim, and in anticipation of sentencing, the Defendant retained Dr. Lori Butts, a forensic psychologist, to conduct a psychosexual and risk assessment. *See Sealed*

*Psychosexual and Risk Assessment Report.* Dr. Butts' findings most certainly do not warrant a downward departure.

First, Dr. Butts recognized that the Defendant "denied any history of mental health or psychiatric treatment" (*Id.* at 3); "his ex-wife and his mother both denied ever observing Dr. Mizrachy express or experience any type of psychiatric symptoms or disturbance" (*Id.*); he "never displayed any symptoms of depression, anxiety or bipolar disorder" (*Id.*); and "neither Dr. Mizrachy nor his family reported that he has ever been psychiatrically hospitalized or ever suggested that he required any type of mental health treatment prior to the allegations" (*Id.*).

Second, the Defendant essentially denies the root of his problem: that he sought child sexual abuse material. Dr. Butts couches this by reporting the Defendant "provided some context" when discussing the allegations:

> He discussed that he was viewing internet pornography and he was chatting with strangers on the Kik application. He also admitted to extra-martial affairs with adult women with whom he worked. He explained there were times when he would have sex with strangers that he met but they were adults…. He admitted to "cropping" pictures of his daughter's friends who had been in his home. He admitted to chatting with someone who appeared to be underage…. He was not sexually interested in pre-pubescent children….

(*Id.* at 4). Curiously, the Defendant's recent efforts to distance himself from prepubescent children—assertions which Dr. Butts relies on to make her findings—is wholly contradicted by the evidence: that the video in question is of a six-year-old child being raped; that the Defendant took photographs of children as young as 10-years-old; and that the Defendant admitted to using the Kik application to communicate with underaged children in a sexually explicit manner. This begs the question that if Dr. Butts' analysis is based on minimization by the Defendant, her entire analysis is both void and inaccurate.

Further, Dr. Butts' reliance on the CPORT is nothing more than a predictor. The CPORT is a recent tool that many psychologists are using to try to identify the risk of re-offending by "child pornography offenders." Dr. Butts found that, based on the Defendant's CPORT, his "re-offense rate" is 6%. The CPORT like any other so-called "predictive tools," is limited to the prediction of only whether someone will be caught, not whether they will reoffend. The community protection factor cannot be so singularly hitched to the myopic assessment of whether someone will commit a crime that is also detected and results in a prosecution that also results in a conviction. Indeed, the utility of those risk assessments is more for supervision authorities (i.e. probation officers) who must use some methodology to allocate their limited resources to managing those on release following a prison term. They are not good tools for a sentencing judge to use in trying to predict whether a defendant will actually commit a new crime (irrespective of detection). Indeed, to the extent that Court wants to use those risk assessment tools at all, the single best predictor of whether the Defendant will be caught committing a new crime is the age of the Defendant, which means that the longer he is in prison, the older he will be when he gets out and thus the lower his risk of getting caught committing a new crime. Therefore, the best way to protect the community is to incapacitate him by the very obvious method of incarcerating him for an extended period of time until he is highly unlikely to get caught committing a new crime. The younger he is when he is released, the higher the likelihood he will reoffend.

Dr. Butts will have to concede that she cannot in any terms predict the future for the Defendant and she cannot say that incarceration is not the proper way to deter the Defendant, especially when the Bureau of Prisons offers significant treatment for sex offenders at nine (9) of

its institutions, some of which include a high intensity 18-month residential treatment program.[6]

Moreover, the Bureau of Prisons has issued a 31-page program statement outlining, specifically,

the treatment offered to sex offenders; treatment that the Defendant himself so eagerly seeks.[7]

The Defendant lastly hangs his hat on Dr. Butts' diagnosis of "Other Specified Disruptive,

Impulse-Control and Conduct Disorder" ("ICCD") (*Id.* at 7). As outlined in Dr. Butts' report, she

noted the following based on the Defendant's divulsion as an explanation to his behavior

surrounding the current charges:

> …when discussing the behaviors that gave rise to the current charges, the Defendant stated that it "seems like an addiction" when discussing his smart phone habits. He recounted habitual and compulsive behaviors. He recalled that he would check Facebook "100 times a day". He played poker online, bet on sports, and participated [in] a trivia game. He denied that he spent a significant sum of money in these online gambling activities. Nevertheless, he described the interaction with the phone as a compulsion "to see the scores or to get Information." He recalled "always looking at my phone" and described himself as a "slave to my phone"

*Id.* at 3.

Simply put, it appears that the Defendant's obsession with his smart phone is no different

than that of the majority of the general population. Checking social media, engaging in online

games, and having a desire to maintain constant contact with his phone is not in any way related

to or tied with sexual arousal for the rape and sexual exploitation of children. His sentencing has

less to do with being a "slave to his phone" and more to do with being a predator of children.

Crucially, however, Dr. Butts report does make two vital findings: that the Defendant

"demonstrated problems with sexual self-regulation" and that he "had significant opportunities for

---

[6] https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp

[7] https://www.bop.gov/policy/progstat/5324_010.pdf

victim access" (*Id.* at 7). Dr. Butts recommended treatment for sexual self-regulation and sex offender treatment (*Id.*). In its literal meaning, the Defendant is a man who cannot self-regulate his sexual desires, and yet, puts himself in a position for 20 years where he had private access to children in his capacity as a pediatrician.

Dr. Butts further diagnosed the Defendant with Unspecified Paraphilic Disorder. Importantly, according to the American Psychiatric Association, "paraphilic disorders include eight conditions: exhibitionistic disorder, fetishistic disorder, frotteuristic disorder, pedophilic disorder, sexual masochism disorder, sexual sadism disorder, transvestic disorder, and voyeuristic disorder". *See* American Psychiatric Association Paraphilic Disorders.

C.    Defendant's Supporting Cases of Similarly Situated Individuals[8]

The Defendant cites a handful of cases to show that a downward would be appropriate, and argues that these cases involve similarly situated individuals. *See Defendant's Sealed Sentencing Memorandum* at 14-18. Importantly, these cases do not mirror the acts of this Defendant. A review of the record in each of the cited cases involving pediatricians who possessed/received/distributed child pornography and received favorable sentences, support any findings that those individuals sought out real children on social media applications, received nude photographs of those real children, and communicated with them in a sexual manner.

| LEGAL AUTHORITY | CIRCUMSTANCES |
|---|---|
| United States v. Todd Parrilla (12-CR-140; U.S. District Court, Connecticut) | "Nor is Mr. Parilla alleged to have any improper contact with a child"; |

---

[8] Contrarily, the Eleventh Circuit has affirmed the denial of downward variances involving similarly situated defendants. *See e.g., United States v. Martinez*, 514 F. App'x 833, 835 (11th Cir. 2013) (affirming a seventy-eight month, low-end of the guidelines sentence when the defendant pled guilty to one count of possession of child pornography, and finding that a downward variance is inappropriate because of "the very young age of the children involved in the images in this case, the fact that [Defendant] had no history of abuse or emotional or mental disorder, and the fact that [Defendant] was not himself a minor."

|  | Victim of sexual trauma |
|---|---|
| United States v. Carl Koplin (12-CR-186; U.S. District Court, Connecticut) | "Not a single allegation has been made that Mr. Koplin ever behaved inappropriately with a child"; |
| United States v. David Scanlan (14-CR-42; U.S. District Court, Pennsylvania) | The government agreed, by way of a plea agreement, to recommend the five-year minimum mandatory sentence if the Defendant took a polygraph examination and was found to have been truthful when he advised he never had sexual contact with a child, after the Defendant proceeded by an Information and pled the same day;<br><br>No indication of any contact or communications with children. |
| United States v. Christopher Pelloski (13-CR-230; U.S. District Court, Ohio) | Victim of childhood sexual abuse himself;<br><br>No indication of any contact with children. |
| United States v. Robert Dickey (09-cr-6040; U.S. District Court, Washington D.C.) | 74-year-old defendant;<br><br>No indication of contact with children. |

It absolutely cannot be said that the above-mentioned individuals—who had, what appears to be, zero contact with children in any capacity aside from the download of videos and/or images—are similarly situated to the Defendant who has admitted to seeking out children on Kik and receiving sexually explicit images from those children.


[SPACE INTENTIONALLY LEFT BLANK]


16

## CONCLUSION

For the reasons stated above, this Court should grant the United States' motion for upward

variance and sentence the Defendant to a term of imprisonment of ten (10) years.[9]


Respectfully submitted,


JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By: */s/ Brooke Elise Latta*
BROOKE ELISE LATTA
Assistant United States Attorney
Florida Bar No. 105315
500 E. Broward Blvd., Suite 700
Fort Lauderdale, Florida 33394
(305) 619-7484
Brooke.latta@usdoj.gov


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 28, 2022, the undersigned electronically filed the

foregoing document with the Clerk of the Court using CM/ECF.


*/s/ Brooke Elise Latta*
BROOKE ELISE LATTA
Assistant United States Attorney

---

[9] The undersigned has consulted with counsel for the defense, Richard Merlino, who has advised that he opposes the instant motion.